545 F.2d 1073
 192 U.S.P.Q. 129
 Ervin KAPLAN, Plaintiff-Appellee,
v.
John J. CORCORAN, as General Counsel for the United States
Veterans Administration, and Donald E. Johnson or Successor,
as Administrator of Veterans Affairs of the United States
Veterans Administration, Defendants-Appellants.
 No. 76-1515.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 22, 1976.
Decided Nov. 24, 1976.
 
 Samuel K. Skinner, U. S. Atty., Chicago, Ill., Thomas G. Wilson, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for defendants-appellants.
 Harry M. Levy, Chicago, Ill., for plaintiff-appellee.
 Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and TONE, Circuit Judge.
 HASTINGS, Senior Circuit Judge.
 
 
 1
 The basic question for review on this appeal appears to be whether the district court[1] erred in holding unconstitutional Executive Order 10096, which provides in substance that the United States shall obtain title to any invention made by any Government employee during working hours, or with a contribution by the Government, or which bears a direct relation to, or is made in consequence of, the inventor's official duties.
 
 
 2
 Executive Order 10096 was promulgated by then President Harry S. Truman on January 23, 1950, "by virtue of the authority vested in (him) by the Constitution and statutes, and as President of the United States and Commander in Chief of the armed forces of the United States in the interest of the establishment and operation of a uniform patent policy for the Government with respect to inventions by Government employees." 15 F.R. 389 (January 25, 1950).
 
 
 3
 The critical part of Executive Order 10096 is to be found at 37 C.F.R. Section 100.6, and is set out in the Appendix to this opinion.
 
 
 4
 We first need to describe the underlying litigation in the district court. Plaintiff Ervin Kaplan had been employed by the United States Veterans Administration as a medical doctor for twenty years. He served as Chief of Nuclear Medicine Service at the Veterans Administration Hospital in Hines, Illinois, for fifteen years. His duty was principally as administrator, but he also acted in the capacities of clinician, teacher and supervisor of research.
 
 
 5
 In late 1969 or early 1970, Kaplan conceived a system for whole body imaging and count profiling with a scintillation camera. The idea was subsequently reduced to a practical mechanism and the first operable system was completed on November 4, 1970. This resulted in the issuance to Kaplan of U.S. Patent No. 3,839,641, on October 1, 1974, and this is the patent which is the core of this litigation. At that time John J. Corcoran was serving as General Counsel for the United States Veterans Administration, and Donald E. Johnson, or his successor, was Administrator of Veterans Affairs of the United States Veterans Administration.
 
 
 6
 Following prescribed procedures under Veterans Administration Regulations 650-663 (38 C.F.R. Sections 1.650-1.663) and based upon Executive Order 10096, Corcoran initiated a proceeding for the determination of ownership rights in the patent, premised on Kaplan's status as a Government employee. The end result of this investigation was that the General Counsel determined and stated in a letter dated July 17, 1973, that Kaplan had failed to rebut the presumption of Government ownership in the patent, pursuant to Executive Order 10096.
 
 
 7
 Kaplan then brought the underlying action in the district court against Corcoran and Johnson. Kaplan sought judicial review of an adverse administrative determination by the Commissioner of Patents on May 22, 1974, which affirmed the determination of presumptive Government ownership of the patent rights reached by the Office of the General Counsel of the Veterans Administration on July 17, 1973, as above set out.
 
 
 8
 Jurisdiction was asserted under the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., seeking review of the adverse administrative determination, and on federal question jurisdiction, pursuant to 28 U.S.C. § 1331, seeking a determination that Executive Order 10096 is in violation of Article I, Section 8, Clause 8, of the United States Constitution.
 
 
 9
 The district court ruled that it had jurisdiction. The administrative record was then filed with the court. The parties filed cross-motions for summary judgment.
 
 
 10
 In a carefully considered unreported memorandum of decision, the court determined that (1) the July 17, 1973, decision of the Veterans Administration was not arbitrary and was supported by substantial evidence; (2) the July 17, 1973, decision was not based upon a mistake of fact; and (3) neither the Veterans Administration decision nor the later decision of the Commissioner of Patents was based on a mistake of law.
 
 
 11
 However, the court further stated: "According to this Court's immediately preceding analysis, the VA is entitled to the rights to the subject patent if it is conceded that E.O. 10096 is valid and the proper standard for a determination in this matter." (Emphasis added.)
 
 
 12
 After a lengthy consideration and analysis of the case, the trial court stated:
 
 
 13
 Based upon the preceding analysis, it is the opinion of this Court that the President lacked the authority to unilaterally promulgate E.O. 10096. The provisions of the order are a violation of the separation of powers sought by the architects of our governmental system. The E. O. is, in fact, a unilateral promulgation which cannot be considered a part of the contract of employment so as to bind governmental employees under the principles of the Dubilier case. Absent this element of agreement between the parties, the order is little more than a unilateral statement of policy, in the style of legislation, treating rewards to be issued, or withheld, from inventors. The Constitution specifically reserves to Congress the authority to establish such policies and the attempts by the executive branch to make incursions on Congress' authority are unwarranted and without force and effect. Consequently, this court is compelled to find that the E. O. is unconstitutional and of no effect on the merits of this case. Furthermore, the Court finds that the Dubilier decision compels a finding in favor of the plaintiff and against the defendants.
 
 
 14
 The trial court concluded by expressly reversing the decisions of the General Counsel and the Commissioner of Patents. Defendants were permanently enjoined from taking any action requiring plaintiff to assign his interest in the patent in suit to the United States, with the exception that plaintiff was ordered to grant to the Government an irrevocable, free, and non-exclusive license for the use of the subject patent. Plaintiff was further declared to be entitled to the entire domestic right, title, and interest in said invention, with the exception of the shop right granted to the Government.
 
 
 15
 An order was entered granting plaintiff's motion for summary judgment and denying defendants' cross-motion for summary judgment. Defendants appealed. We reverse.
 
 
 16
 We have federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331. For the purposes of this appeal we shall assume there was jurisdiction in the district court.
 
 
 17
 We next consider the much discussed case of United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 513 (1933). The opinion was authored by Mr. Justice Roberts, with Mr. Justice Stone, joined by Mr. Justice Cardozo, dissenting. Mr. Chief Justice Hughes filed a separate dissent.
 
 
 18
 The Court recognized that a patent is property and title to it can pass only by assignment. Further, that a valid contract to assign an invention when created will be specifically enforced. The Court also recognized that the patent rights vis-a-vis employer and employee "spring from the contract of employment." Id. 187, 53 S.Ct. 554. The Court then considered the employment of the two federal employees of the electrical division of the Bureau of Standards who had invented an application of alternating currents to broadcast receiving sets. The Court stated that if the employees were employed to make an invention, then they must assign the invention to their employer because the invention was the precise subject of their employment. But, "(o)n the other hand, if the employment be general, albeit it cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent." Id. 187, 53 S.Ct. 557.
 
 
 19
 Citing Solomons v. United States, 137 U.S. 342, 346, 11 S.Ct. 88, 34 L.Ed. 667 (1890), the Court in Dubilier stated in substance that the relative rights of the Government to require an assignment of patent rights are governed by the same rules enforced in private employment. 289 U.S. 191, 53 S.Ct. 554. In Dubilier the Court rejected the doctrine that the patents at hand should be held in trust, express or implied, for the public good by the Government. Id. 196, 53 S.Ct. 554. Like the Court, we are unable to find any constitutional or statutory support for this doctrine.
 
 
 20
 The Court then asks the critical question relating to the governmental interest in such matters: "Where shall the courts set the limits of the doctrine? For, confessedly, it must be limited." Id. 197, 53 S.Ct. 561. The Court suggested an answer to its own question: "The courts ought not to declare any such policy; its formulation belongs solely to the Congress." Id. 198, 53 S.Ct. 561.
 
 
 21
 The Court discussed the various legislative attempts at policy formulation, and in conclusion looks to future guidance in this area. Its rather lengthy conclusion is set out in the margin below.[2]
 
 
 22
 It appears to us that the relevancy of Dubilier to the case at bar, if any, is limited by its own conclusion that such policy declarations must come from Congress and not from the courts or administrative officers.
 
 
 23
 It should here be noted that the basic policy of Executive Order 10096 was the culmination of extensive study of the patent ownership policies of Government agencies, private industry, educational institutions, private research organizations, and foreign governments, conducted by the Attorney General of the United States and submitted to the President in a three-volume report in 1947. 1 Rept.Att'y Gen. (1947).
 
 
 24
 The various applicable provisions of Executive Order 10096 are set out in the Appendix to this opinion and need not be further analyzed here.
 
 
 25
 The issue of whether the President had implied powers from the Constitution to promulgate Executive Order 10096 need not be answered here if there was statutory authority from the Congress to do so.
 
 
 26
 Title 5 U.S.C. § 301, Departmental regulations, provides:
 
 
 27
 The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. * * *
 
 
 28
 This Section 301 would appear to authorize the President to promulgate Executive Order 10096 concerning rights in inventions by federal employees.
 
 In addition, 5 U.S.C. § 3301 provides:
 The President may
 
 29
 (1) prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service; * * *
 
 
 30
 Title 5 U.S.C. § 7301, Presidential regulations, provides:
 
 
 31
 The President may prescribe regulations for the conduct of employees in the executive branch.
 
 
 32
 We find that there was statutory authority from Congress to authorize the President to promulgate Executive Order 10096. There appears to be no statutory authority requiring a contrary holding.
 
 
 33
 In Letter Carriers v. Austin, 418 U.S. 264, 273-279, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), the Court upheld the validity of an Executive Order establishing a labor-management relations system for federal employees modeled after the National Labor Relations Act.
 
 
 34
 Since the promulgation of Executive Order 10096 on January 23, 1950, there has been Congressional acquiescence in the order by the failure of Congress to modify or disapprove it. In United States v. Midwest Oil Co., 236 U.S. 459, 474, 35 S.Ct. 309, 313, 59 L.Ed. 673 (1915), the Court gave approval to the doctrine of Congressional acquiescence, where the court recognized that "the long continued practice, known to and acquiesced in by Congress, would raise a presumption that the withdrawals (of lands) had been made in pursuance of its consent or of a recognized administrative power of the Executive in the management of the public lands."
 
 
 35
 We have not found it necessary here to mention the record as it may lead to or away from the merits of Kaplan's claim. Further, we need not hazard a solution to the obvious question of whether Executive Order 10096 may have been directed toward clarifying the much earlier case of Dubilier.
 
 
 36
 It has been suggested that the long-standing policy of Congressional acquiescence must be deemed a gloss on the executive power. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). As Mr. Justice Frankfurter, concurring, said at 610-11, 72 S.Ct. at 897: "In short, a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned, engaged in by Presidents who have also sworn to uphold the Constitution, making as it were such exercise of power part of the structure of our government, may be treated as a gloss on 'executive Power' vested in the President by § 1 of Art. II."
 
 
 37
 In conclusion, there was Congressional statutory guidance in the formulation of a policy with respect to government property rights in patents developed by government employees. In light of the foregoing we find Executive Order 10096 to be constitutional and controlling in the status of Kaplan's invention vis-a-vis government patent rights.
 
 
 38
 The district court erred in holding Executive Order 10096 unconstitutional. The judgment appealed from is reversed. This cause is now remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 39
 Reversed and remanded.
 
 APPENDIX
 
 40
 Executive Order 10096, 37 C.F.R. Section 100.6, in relevant part states:
 
 
 41
 § 100.6 Determination of rights in and to inventions.
 
 
 42
 (a) Subject to review by the Commissioner as provided for in this part, each Government agency will determine the respective rights of the Government and of the inventor in and to any invention made by a Government employee while under the administrative jurisdiction of such agency.
 
 
 43
 (b) The following rules shall be applied in determining the respective rights of the Government and of the inventor in and to any invention that is subject to the provisions of this part:
 
 
 44
 (1) The Government shall obtain, except as herein otherwise provided, the entire domestic right, title and interest in and to any invention made by any Government employee (i) during working hours, or (ii) with a contribution by the Government of facilities, equipment, materials, funds or information, or of time or services of other Government employees on official duty, or (iii) which bears a direct relation to or is made in consequence of the official duties of the inventor.
 
 
 45
 (2) In any case where the contribution of the Government, as measured by any one or more of the criteria set forth in subparagraph (1) of this paragraph, to the invention is insufficient equitably to justify a requirement of assignment to the Government of the entire domestic right, title, and interest in and to such invention, or in any case where the Government has insufficient interest in an invention to obtain the entire domestic right, title, and interest therein (although the Government could obtain same under subparagraph (1) of this paragraph), the Government agency concerned shall leave title to such invention in the employee, subject however, to the reservation to the Government of a nonexclusive, irrevocable, royalty-free license in the invention with power to grant licenses for all governmental purposes, such reservation in the terms thereof or where applicable in the terms required by 35 U.S.C. 266, to appear, where practicable, in any patent, domestic or foreign, which may issue on such invention.
 
 
 46
 (3) In applying the provisions of subparagraphs (1) and (2) of this paragraph to the facts and circumstances relating to the making of a particular invention, it shall be presumed that an invention made by an employee who is employed or assigned (i) to invent or improve or perfect any art, machine, design, manufacture or composition of matter, (ii) to conduct or perform research, development work, or both, (iii) to supervise, direct, coordinate, or review Government financed or conducted research, development work, or both, or (iv) to act in a liaison capacity among governmental or nongovernmental agencies or individuals engaged in such research or development work, falls within the provisions of subparagraph (1) of this paragraph, and it shall be presumed that any invention made by any other employee falls within the provisions of subparagraph (2) of this paragraph. Either presumption may be rebutted by a showing of the facts and circumstances and shall not preclude a determination that these facts and circumstances justify leaving the entire right, title and interest in and to the invention in the Government employee, subject to law.
 
 
 
 [1]
 The United States District Court for the Northern District of Illinois, Eastern Division, the Honorable William J. Lynch, Judge, presiding. Judge Lynch is now deceased
 
 
 [2]
 "All of this legislative history emphasizes what we have stated that the courts are incompetent to answer the difficult question whether the patentee is to be allowed his exclusive right or compelled to dedicate his invention to the public. It is suggested that the election rests with the authoritative officers of the government. Under what power, express or implied, may such officers, by administrative fiat, determine the nature and extent of rights exercised under a charter granted a patentee pursuant to constitutional and legislative provisions? Apart from the fact that express authority is nowhere to be found, the question arises, Who are the authoritative officers whose determination shall bind the United States and the patentee? The government's position comes to this that the courts may not reexamine the exercise of an authority by some officer, not named, purporting to deprive the patentee of the rights conferred upon him by law. Nothing would be settled by such a holding, except that the determination of the reciprocal rights and obligations of the government and its employee as respects inventions are to be adjudicated, without review, by an unspecified department head or bureau chief. Hitherto both the executive and the legislative branches of the government have concurred in what we consider the correct view, that any such declaration of policy must come from Congress and that no power to declare it is vested in administrative officers." United States v. Dubilier Condenser Corp., 289 U.S. 178, 208-9, 53 S.Ct. 554, 565, 77 L.Ed. 513