EDWARD S. SMITH, Circuit Judge.
 

 This is an appeal by Robert W. Heine-mann (Heinemann), pro se, from summary judgment by the United States Claims Court (Claims Court) dismissing Heine-mann’s claim of patent infringement and holding that the United States is the owner of patent No. 4,050,381 (’381 patent) on an
 
 *452
 
 invention made by Heinemann, while he was a Government employee.
 
 [1]
 
 The Claims Court affirmed the ownership determination pursuant to Executive Order No. 10096 (Exec. Order No. 10096)
 
 [2]
 
 made by the Commissioner of Patents and Trademarks (Commissioner). We affirm.
 

 Issues
 

 The three issues in this appeal are (1) what is the standard to be used by the Claims Court in reviewing an administrative determination pursuant to Exec. Order No. 10096; (2) whether Exec. Order No. 10096 allows a taking of property without due process of law in contravention of the fifth amendment; and (3) whether the Claims Court erred in entering summary judgment against Heinemann, affirming the administrative determination pursuant to Exec. Order No. 10096, that the Government was the owner of the ’381 patent.
 

 Background
 

 The facts material to this appeal are set forth below.
 
 [3]
 

 Heinemann was employed as a chemist and physical scientist by the Government from 1957 until 1985 at the Army’s Picatin-ny Arsenal located near Dover, New Jersey. In 1963, Heinemann was transferred to the Warheads and Special Projects (WASP) laboratory at Picatinny Arsenal. The WASP laboratory was responsible, among other things, for developing improved nonnuclear, conventional munitions. Heinemann’s primary duties in the WASP laboratory were to coordinate and assist the laboratory chief in performing technical management of the exploratory development work being conducted in the laboratory. He was also expected to keep abreast of the state of the art in technology applicable to the work of the laboratory and to bring such knowledge and information into the laboratory from other Government facilities and from private industry.
 

 In the mid-1960’s, the WASP laboratory was engaged in developing improved conventional munitions for use against armored vehicular targets such as tanks, armored personnel carriers, and trucks. One concept being pursued was the development of an intelligent anti-armor munition. An intelligent munition is one that can independently detect the location of the target during the terminal phase of its trajectory and deliver its destructive force directly to that location.
 

 A co-worker of Heinemann, Theodore Malgeri (Malgeri), was engaged in a search for an effective sensor to be used in an intelligent anti-armor munition. Malgeri envisioned that such a sensor might be used in a barrage rocket having an intelligent warhead. The sensor would, detect the target and cause the warhead to “home” on the target during the final phase of its trajectory.
 

 Heinemann became aware of Malgeri’s program and became very interested in it. In an effort to improve and simplify the barrage rocket, Heinemann conceived the idea of eliminating the need for terminal homing by having the warhead detonate and project a spray of metal fragments at the target as soon as the target was detected.
 

 Heinemann submitted a written disclosure of his concept in January 1966. A patent application was prepared from the disclosure and from further information provided by Heinemann. When the patent application was ready for filing, Heine-mann was requested to assign the ownership of the invention to the Government and he did so on March 23, 1972. The assignment has been held invalid, a determination not challenged in this appeal.
 
 *453
 
 The patent application’was filed and matured into the patent in suit which was issued on September 27, 1977.
 

 Development of the intelligent anti-armor munition continued under the supervision of Malgeri. In the early 1970’s, development in electronics and warhead technology made the nonhoming, immediate-fire warhead approach appear feasible. Funds to develop such a weapon were provided and the work resulted in the development of the Search and Destroy Armor (SA-DARM) munition. SADARM is an 8-inch artillery projectile containing three intelligent submunitions. SADARM is expected to become an operational weapon in the near future.
 

 Prior Proceedings
 

 Heinemann brought suit in the United States Court of Claims on May 15, 1979, contending that the SADARM munition infringed the ’381 patent, that his 1972 assignment of the invention to the Government was voidable, and that he was properly the owner of the patent. Heinemann contended that the Government’s use of the invention covered by the ’381 patent was a taking without due process afforded by the fifth amendment.
 

 The Court of Claims, our predecessor court, remanded the case to the trial division for further proceedings.
 
 [4]
 
 Subsequently, the Court of Claims ordered a bifurcated trial.
 
 [5]
 
 The first trial was to determine “the contested ownership issue” and was to consider the Government’s allegation that, at a minimum, it was “entitled to a royalty free license to practice the invention.”
 
 [6]
 
 The outcome of the first trial was to “determine whether a trial for the alleged infringement would be necessary.” (In October 1982 the trial division of the Court of Claims became the United States Claims Court.)
 

 On March 1, 1984, the Claims Court directed that “this case is remanded to Pica-tinny Arsenal for a final determination, in accordance with Executive Order 10096, of the respective rights of plaintiff and the government in plaintiff’s invention.”
 
 [7]
 
 After the case was remanded, the Army followed its established regulations, in accordance with Exec. Order No. 10096, governing invention rights determinations. The Army was aided by the information developed in the trial record developed by the Claims Court. Under Army regulations, an initial recommendation was prepared by Pi-catinny Arsenal, Heinemann’s immediate command, and forwarded through the Army Materiel Command (formerly the Army Materiel Development and Readiness Command or “DARCOM”) to the Patents, Copyrights, and Trademarks Division of the Army Legal Services Agency.
 

 On July 23, 1984, the Army Legal Services Agency issued the rights determination on behalf of the Department of the Army which concluded in the following language that the Government is entitled to an assignment of the invention:
 

 The inventor is within those categories of employees specified in paragraph 1(c), Executive Order 10096 * * * thereby creating the presumption that [the] Government shall obtain the entire right, title and interest in the invention. This presumption has not been rebutted. The invention bears a direct relation to and was made in consequence of the official duties of the inventor * * *. Accordingly, it is the determination of the Department of the Army that, pursuant to paragraph 1(a), Executive Order 10096, the Government is entitled to an assignment of the entire domestic right, title, and interest in and to the invention.
 

 Throughout the Army’s rights determination, Heinemann was represented by competent legal counsel.
 

 
 *454
 
 Heinemann appealed the Department of the Army determination to the Commissioner of Patents and Trademarks pursuant to 37 C.F.R. § 100.7 on August 22, 1984. On November 30, 1984, Donald J. Quigg (Quigg), then Deputy Commissioner of Patents and Trademarks, issued a decision which concurred with the Army determination and concluded:
 

 A presumption has been established under the Provisions of Executive Order 10096(lc)(iii) and (iv) that appellant’s invention falls within the provisions of paragraph 1(a). Appellant has failed to overcome that presumption.
 

 Hence, Government is entitled to retain all right, title and interest in and to the invention.
 

 On December 28, 1984, Heinemann filed a request for reconsideration pursuant to 37 C.F.R. § 100.7(d) of the Deputy Commissioner’s decision on appeal. On March 1, 1985, Quigg, then Acting Commissioner of Patents and Trademarks, issued a decision which granted the request for reconsideration but again concluded:
 

 Appellant has failed to overcome the presumption under the Provision of Executive Order 10096(lc)(iii) and (IV) [sic] that Appellant’s invention falls within the provisions of Paragraph 1(a).
 

 The decision made no modification of the decision dated November 30, 1984. Throughout the proceedings before the Commissioner, Heinemann was represented by competent legal counsel who submitted written briefs on Heinemann’s behalf.
 

 On May 15, 1985, Heinemann filed a motion in the Claims Court for partial summary judgment on the question of whether he is entitled to any right, title, or interest in or to the ’381 patent. While Heinemann’s partial summary judgment motion was pending, the Government filed a summary judgment motion to dismiss the complaint on the basis that Heinemann was neither the legal nor the equitable owner of the ’381 patent and, therefore, was not entitled to bring this suit under 28 U.S.C. § 1498 or under the fifth amendment of the United States Constitution. On July 11, 1985, a hearing was held before Chief Judge Kozinski. After hearing oral arguments by counsel for each party, Chief Judge Kozinski issued an order granting the Government’s motion to dismiss the complaint and dismissing Heinemann’s motion with costs.
 
 [8]
 

 On September 3, 1985, Heinemann appealed the July 12, 1985, judgment of the Claims Court.
 

 Standard of Review in the Claims Court
 

 The regulations issued pursuant to Exec. Order No. 10096
 
 [9]
 
 provide for an administrative determination by the Government agency employing the inventor, with review available by the Commissioner of Patents and Trademarks. The Government points to section 4(d) of Exec. Order No. 10096 which section provides that the Commissioner’s determination is “with finality * * * between any Government agency and its employees.” The Government argues that if the Commissioner’s determination is final, there can be no judicial review of the Commissioner’s determination.
 

 The Government’s argument against judicial review is without merit. The Commissioner’s determination is a final agency action reviewable under the Administrative Procedure Act (APA).
 
 [10]
 

 The Government is correct, however, in asserting that if the Commissioner’s determination is reviewable, the appropriate standard of review in the Claims Court is the “arbitrary or capricious” standard set forth in the APA. The Claims Court shall “hold unlawful and set aside agency action, findings, and conclusions found to be * * * arbitrary, capricious, an abuse of discre
 
 *455
 
 tion, or otherwise not in accordance with law[.]”
 
 [11]
 

 Here, the Claims Court stated that the Commissioner’s determination under Exec. Order No. 10096 would have to be affirmed under either the “arbitrary or capricious” standard
 
 or
 
 the “substantial evidence” standard. We must affirm because, under the appropriate standard, the Commissioner’s determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 

 Fifth Amendment
 

 The Government’s only argument concerning the constitutionality of Exec. Order No. 10096 is its assertion that Heinemann is precluded from raising this “new issue” on appeal. Although Heinemann’s arguments may not have been clearly stated, the very core of his case is, and always has been, that he believes himself to be the true owner of the patent and that the Government has taken his property without due process of law. Therefore, we must address the fifth amendment issue.
 

 In
 
 Kaplan v.
 
 Corcoran,
 
 [12]
 
 the United States Court of Appeals for the Seventh Circuit held that the President was authorized by statute to promulgate Exec. Order No. 10096. The Seventh Circuit held that the executive order was not prohibited by the 1933 Supreme Court decision in
 
 United States v. Dubilier Condenser Corp.
 

 [13]
 

 In
 
 Dubilier,
 
 there existed no executive order such as Exec. Order No. 10096, nor were there any statutes or regulations concerning invention rights determinations. The Supreme Court held that the common law of invention rights was controlling, in the absence of any authority for the courts or the administrative officers to determine otherwise.
 

 There have been several important occurrences since 1933 which have created a different situation from that in
 
 Dubilier.
 
 There are several statutes which authorize the President to prescribe regulations concerning the conduct of Government employees and the ownership of Government property.
 
 [14]
 
 Executive Order No. 10096 and the related regulations have been promulgated pursuant to the authority vested in the President by statute. Also, as the Seventh Circuit stated, there was congressional acquiescence in the order as shown by “the failure of Congress to modify or disapprove it.”
 
 [15]
 
 We agree with the
 
 Kaplan
 
 holding that Exec. Order No. 10096 is constitutional.
 

 Heinemann has contended that Exec. Order No. 10096 is not uniformly applied in patent rights disputes. Contrary to Heinemann’s assertions, Exec. Order No. 10096 has made possible a uniform policy for determining ownership rights with respect to patents on inventions made by Government employees.
 
 [16]
 
 The executive order provides procedural safeguards by requiring the agency to conform to specified standards in making the invention rights determination. In addition, Heinemann has availed himself of review by the Commissioner, appeal to the Claims Court, and subsequent appeal to this court.
 

 The Army correctly determined, in accordance with Exec. Order No. 10096, that “[t]he invention [bore] a direct relation to and was made in consequence of the official duties of the inventor.” The Army found that Heinemann’s responsibilities included coordinating laboratory work and acting as a liaison for researchers. The Army also found that Heinemann had failed to rebut the presumption that, since
 
 *456
 
 he was within those categories of Government employees specified in Exec. Order No. 10096, his invention became the property of the Government.
 

 The Army’s determination was affirmed by the decision of the Commissioner of Patents and Trademarks, which decision was affirmed by the United States Claims Court. There has been no “taking” because the invention was not the property of Heinemann, and there has been no lack of due process afforded Heinemann under the provisions of Exec. Order No. 10096 as administered and reviewed by the agencies and by the courts.
 

 Summary Judgment
 

 Summary judgment shall be rendered if “there is no genuine issue as to any material fact” and if “the moving party is entitled to judgment as a matter of law.”
 
 [17]
 
 Thus, where both parties have filed dispositive motions, and neither has challenged nor denied the material facts relied upon by the other, the trial court may properly enter judgment on the issue of law, based upon the material facts contained in the motions.
 

 In the Claims Court’s proceedings below, both Heinemann and the Government brought cross-motions for summary judgment. Heinemann’s motion was for partial summary judgment declaring that he had title to the ’381 patent. The Government’s motion was for summary judgment dismissing the complaint because of the Exec. Order No. 10096 determination that Heine-mann did not have title to the ’381 patent. Heinemann did not challenge the material facts relied upon in the Government’s motion, and likewise the Government did not challenge the material facts relied upon in Heinemann’s motion. Accordingly, there were no genuine issues of material fact, and the Claims Court correctly granted the Government’s motion after carefully Reviewing the Commissioner’s determination and deciding that it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 

 Conclusion
 

 Executive Order No. 10096, relating to ownership determinations on inventions made by Government employees, is constitutional. Under the appropriate standard of review, the Claims Court correctly entered summary judgment dismissing Heine-mann’s claim of patent infringement and holding that the Government is the owner of the ’381 patent obtained on Heinemann’s invention. We affirm.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Heinemann v. United States,
 
 No. 202-79C (Cl.Ct. July 12, 1985).
 

 [2]
 

 . Exec. Order No. 10096, 3 C.F.R. 292 (1949-1953 Comp.),
 
 amended by
 
 Exec. Order No. 10930, 3 C.F.R. 456 (1959-1963 Comp.).
 
 See
 
 regulations at 37 C.F.R. § 100 (1984).
 

 [3]
 

 . Additional facts are set forth in the opinions reflecting the prior history of this case at 4 Cl.Ct. 564, 223 USPQ 282 (1984); 226 Ct.Cl. 622 (1981); 223 Ct.Cl. 479, 620 F.2d 874, 206 USPQ 418 (1980).
 

 [4]
 

 .
 
 Heinemann v. United States,
 
 223 Ct.Cl. 479, 620 F.2d 874, 206 USPQ 418 (1980).
 

 [5]
 

 .
 
 Heinemann v. United States,
 
 226 Ct.Cl. 622 (1981).
 

 [6]
 

 .
 
 Id.
 
 at 623.
 

 [7]
 

 . Heinemann v. United States, 4
 
 Cl.Ct. 564, 571 (1984).
 

 [8]
 

 .
 
 See supra
 
 note 1.
 

 [9]
 

 .
 
 See supra
 
 note 2.
 

 [10]
 

 . 5 U.S.C. § 704 (1982).
 

 [11]
 

 . 5 U.S.C. § 706' (1982);
 
 see Citizens To Preserve Overton Park, Inc. v. Volpe,
 
 401 U.S. 402, 413-14, 91 S.Ct. 814, 822-23, 28 L.Ed.2d 136 (1971).
 

 [12]
 

 .
 
 Kaplan v. Corcoran,
 
 545 F.2d 1073 (7th Cir. 1976).
 

 [13]
 

 .
 
 United States v. Dubilier Condenser Corp.,
 
 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933).
 

 [14]
 

 .
 
 See, e.g.,
 
 5 U.S.C. §§ 301, 3301, 7301 (1982).
 

 [15]
 

 .
 
 Kaplan,
 
 545 F.2d at 1077.
 

 [16]
 

 .
 
 See, e.g., In re Conway,
 
 228 USPQ 50 (Dec. Comm’r Pat. 1985);
 
 In re Williams,
 
 228 USPQ 381 (Dec. Comm’r Pat. 1985).
 

 [17]
 

 . FED.R.CIV.P. 56(c).