248

No. 49572.

United States Court of Claims.

Jan. 13, 1953.

---

Edgar J. Goodrich, Washington, D. C., Jerome J. Dick, Washington, D. C., on the brief, for plaintiff.

Harland F. Leathers, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition because it says the petition (1) fails to state a cause of action within the jurisdiction of this court, and (2) does not state a cause of action upon which relief can be granted.

The Secretary of the Navy renegotiated plaintiff's contracts with persons who had contracts with the United States and found that he had realized excess profits of $29,-947.84 between April 28, 1942[1] and December 31, 1942. Against this amount a Federal income tax credit was allowed, resulting in a balance of $18,426.66. This amount, plus interest of $1,812.04 was paid by plaintiff under protest, and he sues to recover.

Plaintiff alleges that since April 1938 he had been an industrial consultant in Washington, District of Columbia, engaged in analyzing the factors necessary to convert factories from peacetime production to war production, and in persuading manufacturers to make ready to do so whenever their factories should be called upon to produce war material. He says that the companies he represented paid him a monthly fee for consultation and for services in keeping them advised on governmental procedure, regulations, expediting allocations of materials, etc., and he says that his income for the period in question was primarily for the performance of these services.

He further alleges that "any and all negotiations with Government procurement officers in connection with making bids and obtaining contracts were handled by the executives of the companies who came to Washington for that purpose," and he says that "if any of claimant's compensation after April 28, 1942, was remotely attributable to the procurement of contracts with the Government or subcontractors thereunder, it was in an amount far less than that determined by the Under Secretary of the Navy and his authorized representatives." And he then flatly alleges, "claimant did not solicit or procure Government contracts."

Plaintiff next alleges that, while the order determining that he had realized excess profits on subcontracts under contracts with the Government did not specify that part of the Renegotiation Act which was applicable to plaintiff, the Paymaster General of the Navy subsequently wrote a letter to one of his clients stating that the order was based on the finding that plaintiff was a

---

1. This was the date of the enactment of the first Renegotiation Act, 50 U.S.C.A.Appendix, § 1191.

subcontractor within section 403(a) (5) (B) (ii) of the Renegotiation Act, as amended, 58 Stat. 21, 78–81. Plaintiff, however, in his petition denies that he comes within this provision of the Renegotiation Act, or within any other provision thereof.

Defendant's motion to dismiss is based primarily upon plaintiff's failure to exhaust his administrative remedy in that he did not take an appeal to the Tax Court from the determination of the Secretary of the Navy that he had realized excess profits on subcontracts under contracts with the Government. The Tax Court, of course, is an administrative agency.

Plaintiff says that it was unnecessary for him to take an appeal to the Tax Court in order to exhaust his administrative remedy, because he says the Revenue Act of 1943, 58 Stat. 21, 87, which amended previous renegotiation laws, provided in section 403 (e) (2) thereof that a subcontractor such as plaintiff was not entitled to take an appeal to the Tax Court from a determination of excess profits for the year 1942, although he did have a right to do so in later years.

The section of the Renegotiation Act under which the Secretary of the Navy asserted the right to make a final determination that plaintiff had realized excess profits on subcontracts under contracts with the Government provides that a subcontract shall include:

"(B) Any contract or arrangement other than a contract or arrangement between two contracting parties, one of which parties is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party, (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure or procuring a contract or contracts with a Depart-

ment or a subcontract or subcontracts: * * *."

Plaintiff in his petition alleges facts to show that he does not come within this section. The Secretary of the Navy thought he did come within it. We, of course, are not bound by the allegation in plaintiff's petition that he did not come within the provisions of this section, nor by the Secretary's determination. This is a conclusion to be drawn from the facts and the application of this section to them.

If plaintiff did not come within the provisions of this section, as he alleges, then it is plain that he has not exhausted his administrative remedy, because under section 403(e) (2) of the Revenue Act of 1943, 58 Stat. 21, 86–87, any contractor or subcontractor aggrieved by a determination of the Secretary as to excess profits for the year 1942 might seek a review of such determination in the Tax Court of the United States. The Tax Court, of course, is an administrative agency, a part of the executive branch of the Government. Section 403(e) (2) reads as follows:

"(2) Any contractor or subcontractor (excluding a subcontractor described in subsection (a) (5) (B)) aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943 as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of the enactment of the Revenue Act of 1943, file a petition with The Tax Court of the United States for a redetermination thereof, and any such contractor or subcontractor aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any such fiscal year, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days

(not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of such determination, file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have the same jurisdiction, powers, and duties, and the proceeding shall be subject to the same provisions, as in the case of a petition filed with the court under paragraph (1), except that the amendments made to this section by the Revenue Act of 1943 which are not made applicable as of April 28, 1942, or to fiscal years ending before July 1, 1943, shall not apply."

On the other hand, if plaintiff did in fact come within the provisions of section 403 (a) (5) (B), as he alleges, then he could not appeal to the Tax Court. The foregoing section giving the right of appeal to a contractor or subcontractor excludes "a subcontractor described in subsection (a) (5) (B)." For this reason plaintiff alleges that he had exhausted his administrative remedy.

This position, however, is not well taken, in view of the decision of the Supreme Court in Macauley v. Waterman Steamship Corporation, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839. In that case the Waterman Steamship Corporation sought to enjoin the Maritime Commission from renegotiating certain contracts it had entered into with the British Ministry of War Transport for charters to operate ships on the Red Sea. The Maritime Commission insisted that these charters were subject to renegotiation because it said the United States Government was the real contracting party and was responsible for paying the obligations incurred therein.

The District Court dismissed plaintiff's complaint on the ground that it had failed to exhaust its administrative remedy. The Supreme Court held that this was correct. It quoted with approval from its decision in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, at page 50, 58 S.Ct. 459, at page 463, 82 L.Ed. 638, in which the court had said, that the grant of an injunction would violate the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." The court, 327 U.S. at page 544, 66 S.Ct. at page 714, continued:

"Just as in the Myers case, the claim here is that the contracts are not covered by the applicable statute. And the applicable statute, the Renegotiation Act, like the National Labor Relations Act in the Myers case, empowers administrative bodies to rule on the question of coverage. * * * Contrary to respondent's contention that this language [providing for a determination of excess profits by the Tax Court] limits the Tax Court's jurisdiction so as not to include the power to decide questions of coverage, we think the language shows that the Tax Court has such power. For a decision as to what are and are not negotiable contracts is an essential part in determining the amount of a contractor's excessive profits. The legislative history of the Renegotiation Act, moreover, shows that Congress intended the Tax Court to have exclusive jurisdiction to decide questions of fact and law, which latter include the issue raised here of whether the contracts in question are subject to the Act. * * *"

Plaintiff confessedly never gave the Tax Court a chance to decide whether or not it was an (a) (5) (B) subcontractor. Not until after the Tax Court had ruled on this question has any court jurisdiction of plaintiff's claim, whether or not it might have jurisdiction after the Tax Court had determined this question.

In Lichter v. United States, 334 U.S. 742, 792, 68 S.Ct. 1294, 1320, 92 L.Ed. 1694, the Supreme Court also said that "Failure of the respective petitioners to exhaust that procedure [an appeal to the Tax Court] has left them with no right to present here issues *such as those as to coverage* and the amount of profits which might have been presented there." (Italics ours.)

In Hickey v. United States, 88 F.Supp. 888, 116 Ct.Cl. 241, plaintiff claimed it was.

not subject to renegotiation under the provisions of the Renegotiation Act and that, therefore, the Secretary of War had exacted excess profits from it without authority, and it brought suit in this court to recover the amount collected from it. In that case we said again that the Renegotiation Act vested in the Tax Court jurisdiction to decide whether or not a contract is subject to the Renegotiation Act.

The United States filed suit in the District Court to recover the amount of excess profits determined by the Secretary of the Navy to be owing by plaintiff. While this suit was pending, plaintiff paid the amount demanded, exclusive of interest. Defendant raises this payment as a defense to plaintiff's suit, but we do not discuss it, in view of our conclusion that plaintiff had not exhausted his administrative remedy, but we call attention to our decision in Ring Construction Corp. v. United States, 102 F. Supp. 569, 121 Ct.Cl. 604, certiorari denied 343 U.S. 953, 72 S.Ct. 1046.

Defendant's motion is granted, and plaintiff's petition is dismissed.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.