### DRESSER OPERATIONS, Inc.
### v.
### UNITED STATES.
### No. 563–53.

United States Court of Claims.
June 8, 1954.

Fuller Holloway, Washington, D. C., for plaintiff. Charles D. Hamel, John Enrietto and Hamel, Park & Saunders, Washington, D. C., were on the brief.

Harland F. Leathers, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition on the ground that the facts alleged therein fail to state a cause of action (1) within the jurisdiction of this court, and/or (2) upon which relief can be granted.

The plaintiff was renegotiated for the fiscal year ended December 31, 1943, and a determination was issued on September 28, 1945, under which the net

amount due the Government was $231,-706.60, after appropriate tax credits.

On May 20, 1949, plaintiff paid to defendant $231,706.60.

The petition recites that the unilateral determination of excessive profits was not timely issued by the renegotiators, and that the amount of the principal was paid to the United States "in order to curtail any further interest accumulation until its rights could be determined, and under compulsion from defendant."

There is pending in the United States District Court for the Southern District of California a suit by defendant against plaintiff to recover interest on the alleged renegotiation liability above described.

The petition recites that plaintiff requested a review of said determination of the War Contracts Price Adjustment Board and that said request was denied.

Plaintiff further recites that all liabilities for alleged excessive profits for its fiscal year ended December 31, 1943, were fully discharged on October 23, 1945, for the reason the War Contracts Price Adjustment Board made no order determining the amount of plaintiff's alleged excessive profits for said fiscal year prior to the expiration of one year after the commencement of the renegotiation proceedings and that the determination of the War Contracts Price Adjustment Board was invalid, illegal, and void.

Defendant's motion to dismiss is based upon the fact that this court does not have jurisdiction over the subject matter of this action and plaintiff's failure to exhaust its administrative remedy in that plaintiff did not file a petition for a redetermination of its excessive profits in the Tax Court of the United States as permitted by section 403(e) of the Renegotiation Act of 1943, 56 Stat. 245, 246, as amended, 50 U.S.C.App. (1946 ed.) § 1191, 50 U.S.C.A.Appendix, § 1191.

Plaintiff says that the petition in this case does not seek a redetermination of the amount of excessive profits but rather seeks a determination of its rights under the statute, i. e., its right of discharge from liability because an order was not made by the War Contracts Price Adjustment Board within one year following the commencement of the renegotiation proceedings. Hence plaintiff is not required under the Renegotiation Act to petition the Tax Court for an order declaring it discharged of liability under section 403(c) (3). Plaintiff cites in support of this contention the case of Blanchard Machine Co. v. Reconstruction Finance Corporation Price Adjustment Board, 85 U.S.App.D.C. 361, 177 F.2d 727, certiorari denied 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338. In that case an issue was raised regarding timeliness of the commencement of renegotiation. We find that the Blanchard case, supra, upon which plaintiff relies, was specifically modified by the Court of Appeals for the District of Columbia by its opinion in the case of United States v. Martin Wunderlich Co., D.C.Cir., 211 F.2d 433, 436, in which the Court of Appeals said:

"  *   *   *   To the extent the Blanchard case may be construed as holding we have jurisdiction to review the Tax Court's decision as to timeliness in initiating renegotiation, it is no longer to be regarded as authority."

The position of plaintiff that the question here is not one of redetermination but whether or not the order by the War Contracts Price Adjustment Board was timely made is not well taken. Section 403(e) (1) of the Renegotiation Act, supra, provides for the filing of a petition for redetermination of its excessive profits in the Tax Court in the following language:

"Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice

of such order under subsection (c) (1), file a petition with the Tax Court of the United States for a redetermination thereof. Upon such filing *such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency."* [Italics supplied.]

Section 403(c) (1) of the Renegotiation Act provides:

" * * * If the Board does not make an agreement with respect to the elimination of excessive profits received or accrued, it shall issue and enter an order determining the amount, if any, of such excessive profits, and forthwith give notice thereof by registered mail to the contractor or subcontractor. *In the absence of the filing of a petition with The Tax Court of the United States under the provisions of and within the time limit prescribed in subsection (e) (1), such order shall be final and conclusive and shall not be subject to review or redetermination by any court or other agency."* [Italics supplied.]

These sections vest in the Tax Court an exclusive jurisdiction to determine questions of law and fact relating to the amount of excessive profits. This has been repeatedly held by both this court and the Supreme Court in the cases of Whitehead v. United States, 109 F. Supp. 248, 124 Ct.Cl. 136; Ring Construction Corp. v. United States, 102 F. Supp. 569, 121 Ct.Cl. 604, certiorari denied 343 U.S. 953, 72 S.Ct. 1046, 96 L. Ed. 1353; Hickey v. United States, 88 F.Supp. 888, 116 Ct.Cl. 241; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694; Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767, 781, 67 S.Ct. 1493, 91 L.Ed. 1796; Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839.

In the Hickey case, supra, this court stated the rules concisely, 116 Ct.Cl. at pages 245 and 246, as follows:

"The allegations of the petition herein show that the partnership and the individual members thereof, although denying the right of the Secretary of War under the provisions of existing law to make a renegotiation determination and refusing to refund to the Government the excess so determined by the Secretary, failed to petition the Tax Court of the United States, pursuant to the statute above referred to, for a final determination of the amount, if any, of excess profits which had accrued to the partnership. In these circumstances and in view of the decisions above referred to, this court is without jurisdiction to hear and determine plaintiffs' claim. * * * "

In the Whitehead case, supra, this court also said, 124 Ct.Cl. at pages 141 and 142:

"Plaintiff confessedly never gave the Tax Court a chance to decide whether or not it was an (a) (5) (B) subcontractor. Not until after the Tax Court had ruled on this question has any court jurisdiction of plaintiff's claim, whether or not it might have jurisdiction after the Tax Court had determined this question."

In the Lichter case, supra, the court said, 334 U.S. at page 792, 68 S.Ct. at page 1319:

"We uphold the decisions below and the contentions of the Government to the effect that the statutory provision thus made for a petition to the Tax Court was not, in any case before us, an optional or alternative procedure. It provided the one and only procedure to secure a redetermination of the excessive profits which had been determined to exist by the orders of the respective Secretaries or of the Board in the cases before us. Failure of the

respective petitioners to exhaust that procedure has left them with no right to present here issues such as those as to coverage and the amount of profits which might have been presented there. Accordingly, there is excluded from our consideration in this proceeding the contention in the Lichter case that the petitioners' subcontracts were exempt from renegotiation on the ground that they were subcontracts under prime contracts with a Department of the Government and had been awarded to them as the result of competitive bidding for the construction of buildings and facilities. There is excluded also, for example, the contention in the Pownall case that petitioners' contracts which were for amounts under $100,000 each were not subject to renegotiation. Likewise, in the Alexander case, there is excluded the petitioner's contention that it had not made excessive profits within the meaning of the statute and that its contracts for processing wool were not 'subcontracts' within the meaning of the Original Renegotiation Act."

■ In the instant case plaintiff seeks to have the court adjudicate issues which could have been and should have been presented to the Tax Court. Under such circumstances this court lacks jurisdiction and the petition should be dismissed. Hickey v. United States, supra; Whitehead v. United States, supra. Furthermore, the allegations of the petition establish that plaintiff failed to exhaust its administrative remedies.

The failure of plaintiff to seek relief administratively renders the determination of excessive profits final and establishes the lack of jurisdiction in this court. Hickey v. United States, supra; Whitehead v. United States, supra.

Since the determination of excessive profits is final, the petition does not state a cause of action.

In this case, as in the Macauley case, supra, plaintiff has attempted to bring the Renegotiation Act directly to this court and to ignore the administrative remedies provided by the act. The allegations show that here, as the Supreme Court said in the Macauley case [327 U.S. 540, 66 S.Ct. 714], "the administrative process, far from being exhausted, had hardly begun."

Defendant's motion is granted and plaintiff's petition is dismissed.