**MOEN v. UNITED STATES.**

**No. 49131.**

United States Court of Claims.

June 8, 1954.

Daniel M. Gribbon, Washington, D. C., for plaintiff. Dahlberg, Simon, Jayne, Woolfenden & Gawne, Detroit, Mich., and Covington & Burling, Washington, D. C., were on the brief.

Harland F. Leathers, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition.

Plaintiff alleges that he was a member of the partnership of Clarence H. Moen Sales & Engineering Company, which acted as a manufacturer's agent for a number of manufacturers in and around Detroit, Michigan, in the matter of procuring contracts for them and rendering engineering advice in connection with the contracts obtained. For such services the partnership charged and was paid a commission.

On December 4, 1944, the Navy Department suggested that the partnership's profits for the year 1942 were excessive and proposed renegotiation of them. On plaintiff's alleged refusal to participate in the renegotiation proceedings, a unilateral determination was entered by the Navy Department on February 25, 1946, finding that the partnership profits were excessive in the amount of $39,375.00. Later, income tax credits of $6,550.87 and $30,553.32 became due plaintiff, and were offset against the amount of these excessive profits, plus interest thereon.

Plaintiff sues for the amount of these credits, $37,104.19, plus interest, on the ground that the redetermination of excess profits for 1942 was illegal, because the renegotiation proceedings were begun after the period of limitation set out in the Renegotiation Act, 50 U.S.C.A. Appendix, § 1191, and because they were not concluded within the period prescribed therein.

Defendant's motion to dismiss is on the ground that plaintiff had not exhausted his administrative remedy before resorting to this court, relying primarily on Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839, and Whitehead v. United States, 109 F.Supp. 248, 124 Ct.Cl. 136.

If we read alone paragraph 5 of plaintiff's petition, we would conclude that plaintiff had not exhausted his administrative remedy and that the petition should be dismissed for this reason, under the authorities relied on by defendant. Paragraph 5 reads:

"The partnership refused to participate in renegotiation for the fiscal year 1942, on the ground that any renegotiation for that year was bar-

red by section (c) (6) of the Renegotiation Act."

However, plaintiff in his brief says that he did participate in these renegotiation proceedings, urging all the time that the Navy Department had no authority to renegotiate his profits for the year 1942, because the proceedings were started more than one year after the close of the fiscal year within which the profits were realized, which was the limitation period fixed by the Renegotiation Act. He says that he urged not only this upon the Navy Department, but that he also submitted to the Navy Department data concerning his profits in an effort to minimize as much as possible the amount of the excess profits that might be determined. In support of this statement, plaintiff filed as an appendix to his brief communications from the Navy Department to him showing that he did participate in these renegotiation proceedings.

Plaintiff says that his statements in his brief are not in conflict with the allegations of paragraph 5 of his petition if this is read in conjunction with paragraph 10. The first sentence of paragraph 10 reads:

"Plaintiff repeatedly objected to the Navy Department that the unilateral renegotiation order was null and void because renegotiation of profits for the fiscal year 1942 was barred by Section (c) (6) of the Renegotiation Act. * * * "

This allegation seems to us to mean that plaintiff objected after the renegotiation order was entered. Taking the allegation of paragraph 5 and this sentence of paragraph 10 together, we would conclude that plaintiff did not participate in the proceedings, nor raise any objection to the power of the Navy Department to enter a redetermination order, because of the running of the statutory period, until after the order had been entered.

If this is a fair interpretation of the allegations of his petition, plaintiff's petition should be dismissed for failure to exhaust his administrative remedy, but in view of the statements made in plaintiff's brief, we think it proper to overrule the motion to dismiss and permit plaintiff to amend his petition so as to accord with the actual facts, and remit the parties to proof to show the actual facts,—unless defendant's second position is correct.

Defendant's second position is that plaintiff admittedly did not take an appeal to the Tax Court, and that whatever he may have done in the Navy Department, his failure to take such an appeal bars his right to recovery, for failure to exhaust his administrative remedies. As stated, defendant relies on Macauley v. Waterman Steamship Corp., supra, and Whitehead v. United States, supra.

We do not think that either of these cases are controlling. In the case of Macauley v. Waterman Steamship Corp., supra, there was a controversy between the parties over whether or not the Maritime Commission had jurisdiction to renegotiate the profits arising from a contract plaintiff had entered into with the British Ministry of War Transport. Plaintiff asserted since its contract was with the British Ministry of War Transport, and not with the Maritime Commission, the Renegotiation Act gave the Maritime Commission no authority to renegotiate his profits. The Maritime Commission, on the other hand, contended that plaintiff's contract was only technically with the British Ministry of War Transport, and that in fact the Maritime Commission actually paid plaintiff amounts due under that contract and, therefore, the right to renegotiate the profits arising therefrom was given by the Renegotiation Act. The power to renegotiate the profits was an issue in the case and the Supreme Court held that that issue had to be decided by the administrative agency before plaintiff had the right to come to this court; and that after the administrative agency had decided this question, plaintiff was under the duty to take an appeal to the Tax Court to secure the deter-

mination of that administrative agency as to whether or not the power existed to renegotiate the profits arising under such a contract.

In Whitehead v. United States, supra, the issue presented was whether or not the plaintiff came within the provisions of section 403(a) (5) (B) of the Renegotiation Act, defining a subcontract. The parties were in disagreement as to this. We held that this disagreement had to be resolved in the first instance by the administrative agency, and that after the administrative agency had determined it, plaintiff was under the obligation to appeal to the Tax Court to give that body an opportunity to pass on the question. For its failure to do so, we held that it had no right to resort to this court for relief.

The question presented in this case differs from that presented in the two above discussed cases, in that in this case there is no disagreement between the parties as to whether or not plaintiff comes within the terms of section 403(a) (5) (B). Both parties agree that he does.

Now, section 403(e) (2) of the Renegotiation Act reads in part as follows:

"Any contractor or subcontractor (excluding a subcontractor described in subsection (a) (5) (B)) aggrieved by a determination of the Secretary * * * may * * * file a petition with The Tax Court of the United States for a redetermination thereof * * *." 58 Stat. 78, 87.

█ This section, therefore, expressly excludes plaintiff from among those who have the right to take an appeal to the Tax Court and, therefore, by implication it denies plaintiff the right to appeal to the Tax Court. It is, therefore, fallacious to say that plaintiff had not exhausted his administrative remedy for failing to take an appeal which was denied to him. Had there been a controversy between the parties over whether or not plaintiff came within the terms of the statute denying a right of appeal, this controversy should have been presented in the first instance to the Tax Court for its determination; but where there is no such controversy and where both parties agree that the plaintiff does come within the terms of the section denying him the right of appeal to the Tax Court, there is of course no necessity for such an appeal. Plaintiff was no more under an obligation to take an appeal to the Tax Court than he would have been to take an appeal to the British Parliament, or any other body that had no possible concern with the controversy.

In view of the statements made in plaintiff's brief, as set out above, indicating that plaintiff did exhaust his administrative remedy before the Navy Department, defendant's present motion to dismiss plaintiff's petition for failure to exhaust his administrative remedy will be overruled, and plaintiff will be given leave to amend his petition to accord with the actual facts.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

LARAMORE, Judge, took no part in the consideration or decision of this case.