**Edward HALAS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 252–89C.**

United States Court of Federal Claims.

May 6, 1993.

Edward Halas, pro se plaintiff.

William C. Bergmann, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; Vito J. DiPietro, Director, and John Fargo, Washington, DC, of counsel.

### OPINION

FUTEY, Judge.

This patent case is before the court on defendant's motions for dismissal and for summary judgment. Plaintiff seeks compensation under 28 U.S.C. § 1498(a) (1988) for the government's alleged unauthorized use of his patented invention. Defendant contends that plaintiff is not the equitable owner of the patent at issue and, therefore, this court lacks jurisdiction over plaintiff's claim. Alternatively, defendant argues that, because there is no genuine issue as to any material fact regarding the government's rights to the patent in question, the government is entitled to judgment as a matter of law. Plaintiff counters that he owns the patent at issue.

### Factual Background

Plaintiff, Edward Halas, appears *pro se* before the court. On October 1, 1965, plaintiff filed patent application Serial No. 492,110 ('110 application) in the United States Patent Office (Patent Office). On May 1, 1968, the patent examiner requested that plaintiff restrict the '110 application to a single invention. The examiner considered plaintiff's application actually to claim three separate, though related, inventions: Group I, claims drawn to a motor generator with field and armature coils; Group II, claims drawn to a magnetic field producing means; and Group III, claims drawn to a magnetic shaft coupling device. Plaintiff elected the Group I claims as the claims of the '110 application on August 27, 1968.[1]

On December 20, 1968, plaintiff filed a continuation-in-part application, Serial No. 785,622 ('622 application), which contained as its claims the Group II claims from the '110 application. On June 8, 1971, the Patent Office issued plaintiff United States Patent No. 3,584,246 ('246 patent), entitled "Magnetic Field Producing Means," from the '622 application. The '246 patent contains 10 claims, all describing magnetic field producing means for use in apparatus such as generators or motors, comprising superconductive foil strips[2] arranged in specific manners and cooled by a fluid maintained at cryogenic temperatures.[3]

---

1. These claims eventually matured into United States Patent No. 3,521,091, which is the subject of a related opinion by this court, *Halas v. United States*, No. 572-88C (Fed.Cl. filed April 16, 1993).

2. A superconductive material is one that ceases to have any measurable electrical resistance when cooled to absolute zero, the temperature at which substances possess no thermal energy (equal to −273.15 degrees C or −459.67 degrees F).

3. A comparison of the specifications of the '110 application and the '622 application reveals that the differences between the two are minor. The only significant new matter that the '622 application's specifications include is a short para-

On December 30, 1982, pursuant to 10 C.F.R. § 782.5 (1982), plaintiff filed an administrative claim with the Department of Energy (DOE) for infringement of the '246 patent. Plaintiff alleged that, without plaintiff's authorization, DOE funded laboratories that constructed coils like those claimed in the '246 patent. On April 4, 1984, DOE denied plaintiff's claim.[4]

On May 4, 1989, plaintiff filed a complaint in this court.[5] As in his administrative claim with DOE, plaintiff alleges that DOE funded laboratories that fabricated superconducting coils claimed in the '246 patent without plaintiff's permission. Thus, plaintiff seeks compensation[6] for the alleged unauthorized manufacture of the '246 patent for and use of the '246 patent by the government pursuant to 28 U.S.C. § 1498(a).

On October 2, 1989, defendant filed a motion to stay proceedings and remand to the Department of the Army (Army) the question of whether and to what extent the government has rights in the '246 patent. Defendant argued that plaintiff appeared to have been employed by the government when he filed the '110 application, from which the '246 patent ultimately issued. As a result, defendant maintained, the government may have an interest in the '246 patent under Executive Order (E.O.) 10096, codified at 37 C.F.R. § 501.6 (1988).[7] The court granted defendant's motion on October 13, 1989.

On February 2, 1990, the Army sent plaintiff form number DA 2871 (Form DA 2871), an information document that the Army routinely uses in making invention rights determinations. Form DA 2871 contains questions about the circumstances under which an invention was made, government contributions to the invention's making, and the relationship between the invention and the inventor's work-related duties. Form DA 2871 also allows the inventor to state any additional facts that might be relevant to the rights determination. The Army requested that plaintiff complete and return Form DA 2871.

By letter dated February 8, 1990, plaintiff indicated that he did not intend to respond to the Army's request for information. Plaintiff explained that it would be "inappropriate for [him] to converse with [the Army] during the legal proceedings without danger of a mistrial being called."

On February 23, 1990, the Army again wrote plaintiff, explaining the reasons and need for plaintiff's cooperation in completing Form DA 2871. The Army noted that it did not understand plaintiff's fear of a mistrial, given that the Claims Court had stayed proceedings and remanded the case specifically to the Army to determine the government's rights in plaintiff's invention. The Army also requested plaintiff to provide his social security number, which the Army intended to use to locate plaintiff's government employment records. In a March 6, 1990 letter, plaintiff again refused to comply with the Army's requests,

---

graph explaining that superconductors may be plated with niobium or aluminum. Neither of these materials, however, are claimed in the '246 patent. The Army patent counsel who made the recommendations for the Determination of Rights GPB 10–4364 concluded that the claims of the '246 patent are fully supported by the '110 application's specifications, and, thus, the invention of the '246 patent must have been made prior to the filing of the '110 application on October 1, 1965.

**4.** Defendant's Answer at p. 1 (Cl.Ct. filed May 10, 1991).

**5.** On October 29, 1992, the United States Claims Court was renamed the United States Court of Federal Claims, pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992). The United States Court of Federal Claims is the successor to the United States Claims Court in all respects.

**6.** Specifically, plaintiff seeks "10% of the [c]onstruction of the coils that infringed on [p]laintiff's [p]atent [r]ights, in all of their many applications."

**7.** Executive Order (E.O.) 10096, 3 C.F.R. 292 (1949–1953 Comp.), amended by E.O. No. 10930, 3 C.F.R. 456 (1959–1963 Comp.), codified at 37 C.F.R. § 501 (1992). The regulations issued pursuant to E.O. 10096 provide for an administrative determination by the government agency employing the inventor. 37 C.F.R. § 501; *Heinemann v. United States*, 796 F.2d 451, 454 (Fed. Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987).

stating that he did not "really have anything for" the Army.

On May 15, 1990, defendant asked the court to stay this case for an additional 6 months to allow the Army to continue the patent rights determination. The court granted defendant's request on June 6, 1990.

On June 22, 1990, plaintiff appealed this court's June 6, 1990, order to the United States Court of Appeals for the Federal Circuit. The Federal Circuit dismissed plaintiff's appeal on August 27, 1990, because, as an interlocutory order, this court's June 6, 1990, Order was not final or appealable. *Halas v. United States*, 915 F.2d 1583 (Fed.Cir.1990), *cert. denied, Halas v. Dep't of Energy*, 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991) and *cert. denied, Halas v. United States*, 498 U.S. 1067, 111 S.Ct. 784, 112 L.Ed.2d 847 (1991).

On October 25, 1990, the Army issued Determination of Rights GPB Case Number 10–4364 (Determination of Rights GPB 10–4364) for the '246 patent. Based on the evidence before it, the Army determined, pursuant to E.O. 10096, that the government is entitled to the entire right, title, and interest in and to the inventions claimed in the '246 patent.

The Army notified plaintiff of his right to appeal the Army's decision to the Under Secretary of Commerce for Economic Affairs (Under Secretary) within 30 days from October 25, 1990, pursuant to 37 C.F.R. § 501.8(a) (1990).[8] Plaintiff did not appeal the Army's decision to the Under Secretary. Pursuant to 37 C.F.R. § 501.-7(a), the Army's decision became final.

On January 22, 1992, defendant filed in the court a motion for leave to file documents *in camera* pending a court order for their public release. The documents included a motion for dismissal and for summary judgment. After a lengthy discovery period, the parties now have completed filing all appropriate responses to defendant's motion for dismissal and for summary judgment and the case is ready for disposition.[9]

### Discussion

I. *Jurisdiction*

In ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). For *pro se* complaints, the court should hold plaintiff's allegations "to less stringent standards than formal pleadings drafted by lawyers...." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (*quoting Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947); *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir. 1991). Plaintiff bears the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Assoc. Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Rocovich*, 933 F.2d at 993.

Under 28 U.S.C. § 1498(a), this court has jurisdiction over patent claims

---

8. Pursuant to 55 Fed.Reg. 38983–01 (1990), such appeals are now heard by the Under Secretary of Commerce for Technology.

9. On January 11, 1993, the court issued an order stating that it would grant plaintiff's request for oral argument on defendant's motions if plaintiff so desired. Plaintiff, however, did not respond to this order.

against the United States government.[10] Section 1498(a) does not confer a right of action upon a patentee or assignee of a patentee, however, where the government has all rights to the patent at issue. In its Determination of Rights GPB 10–4364, the Army found that the government is entitled to the entire right, title, and interest in and to the invention claimed in the '091 patent. Plaintiff disputes these findings.

As a threshold matter, however, defendant argues that the court should dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant maintains that, under the exhaustion of administrative remedies doctrine, this court has no jurisdiction to review the Army's Determination of Rights GPB 10–4364 because plaintiff refused to cooperate with the Army's counsel during the Army's decision-making process and failed to appeal the Army's decision to the proper administrative authority.

### A. Exhaustion of Administrative Remedies

■ The doctrine of exhaustion of administrative remedies (exhaustion doctrine) provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). In cases where a litigant seeks judicial relief before the administrative process is complete, courts commonly apply the exhaustion doctrine to avoid premature interruption of the administrative process. *McKart*, 395 U.S. at 193, 89 S.Ct. at 1662. Use of the exhaustion doctrine "allow[s] an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to

correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972) [citations omitted].

The exhaustion doctrine also serves certain purposes in cases like the instant one, where the administrative process is at an end and the litigant seeks judicial review of an administrative decision that the litigant failed to appeal, or in which the litigant failed to cooperate. Judicial review requires time and resources. Litigants can make judicial review easier, and often avoid it altogether, if they cooperate in the administrative process and fully pursue their administrative remedies. *McKart*, 395 U.S. at 195, 89 S.Ct. at 1663. When litigants fail to do so, however, they make later judicial review difficult. If, for example, a litigant declines to provide necessary information to the administrative agency, then the reviewing court must struggle with an incomplete record in making its decision. *Id.* at 194, 89 S.Ct. at 1663. By refusing to review an administrative decision where the litigant has not cooperated in the administrative process, courts send future litigants the message that if they fail to exhaust their administrative remedies, then they jeopardize their chances both for a favorable administrative decision and for later judicial relief from an unfavorable decision. *Id.* at 199–200, 89 S.Ct. at 1665–66. In so doing, courts can help to curb the "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195, 89 S.Ct. at 1663.

■ Courts must apply the exhaustion doctrine with "an understanding of its purposes and of the particular administrative scheme involved." *McKart*, 395 U.S. at 193, 89 S.Ct. at 1662. If there is a

---

**10.** The theory behind this court's jurisdiction under 28 U.S.C. § 1498(a) is that the government's unlicensed use of a patented invention is a taking. *Motorola, Inc. v. United States*, 729 F.2d 765, 768 (Fed.Cir.1984). Thus, where plaintiff argues that the government "infringed" his patent, he would be more technically correct in asserting that the government made "unauthorized use" of his patent. *See Judin v. United*

*States*, 27 Fed.Cl. 759, 773 (1993); *Deuterium Corp. v. United States*, 16 Cl.Ct. 454, 459 n. 3 (1989). Nevertheless, the legal standards for ascertaining unauthorized use of a patent under § 1498(a) are equivalent to the standards for ascertaining infringement under 35 U.S.C. § 271. *Motorola*, 729 F.2d at 768; *Deuterium*, 16 Cl.Ct. at 459 n. 3.

statute mandating that a party exhaust its administrative remedies before seeking judicial review of the agency's decision, then the exhaustion doctrine automatically applies to deprive a reviewing court of subject matter jurisdiction over a claim filed by a party who has failed to exhaust its administrative remedies under that statute. If no statute exists, or if the relevant statute does not mandate exhaustion of remedies, however, then the reviewing court has jurisdiction over claims filed by plaintiffs who failed to exhaust their administrative remedies. *Mathews v. Eldridge*, 424 U.S. 319, 328, 330, 96 S.Ct. 893, 899, 900, 47 L.Ed.2d 18 (1976); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253–54 (9th Cir.1978); *Omni Moving & Storage of Va., Inc. v. United States*, 21 Cl.Ct. 224, 230 (1990).

■ The relevant statute in the instant case is 37 C.F.R. § 501, which sets forth the administrative scheme through which a government agency may determine its rights in inventions made by its employees, and through which aggrieved employees may seek relief from the agency's decision. Under § 501.8, government employees who are aggrieved by a government agency determination pursuant to § 501.6(a)(1) or (a)(2) have a right to appeal the agency's determination to the Under Secretary; no employee is, however, required to appeal. *See McKart*, 395 U.S. at 195, 89 S.Ct. at 1663. Moreover, nothing in § 501 appears to limit judicial review of an agency's final patent rights determination where the litigant failed to appeal that determination to the Under Secretary and where the appeals period has expired. *Cf. Mathews*, 424 U.S. at 327, 96 S.Ct. at 899; *Dresser Operations, Inc. v. United States*, 128 Ct.Cl. 294, 297 (1954). Finally, the court is unaware of any precedential decision that mandates application of the exhaustion doctrine under the instant circumstances. Therefore, the court finds that it has subject matter jurisdiction over plaintiff's complaint and that application of the exhaustion doctrine is discretionary, not mandatory. *Omni*, 21

Cl.Ct. at 230; *see also Lucas v. United States*, 25 Cl.Ct. 298, 307 n. 8 (1992).

■ There are a number of compelling reasons why the exhaustion doctrine should apply in the instant case. First, plaintiff deliberately failed to cooperate in the administrative process. *See McGee v. United States*, 402 U.S. 479, 485, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971). Specifically, plaintiff refused to participate in the Army's Determination of Rights GPB 10–4364 despite repeated requests for information by counsel at Ft. Belvoir. Plaintiff's failure to answer the Army's questions prevented the Army from compiling a more comprehensive administrative record and from applying its expertise in relation to plaintiff's claim.

Second, plaintiff's failure to appeal the Army's decision deprived the appeal board of the opportunity to apply its factfinding expertise to the record that was available and deprived plaintiff of an opportunity to supplement the record with any additional facts that it originally had neglected to provide.

Moreover, plaintiff has not provided a reasonable excuse for his failure either to cooperate in providing the information that the Army requested or to appeal the Army's decision. Plaintiff maintains that he chose not to provide the Army with its requested information for fear that conversing with the Army could result in a mistrial. Plaintiff's concern, however, was unfounded. In its order issued October 13, 1989, the court stayed proceedings and remanded the instant case to the Army to determine the government's rights in the '246 patent. This order shows that the Army's Determination of Rights GPB 10–4364 was conducted under the court's auspices. The Army, in turn, acted pursuant to its standard procedures in asking that plaintiff fill out Form DA 2871. The Army did not request any information other than that required to make its Determination of Rights GPB 10–4364, nor did it indicate that it intended to use the information in any way other than that provided for in its statutory procedures.[11]

11. The court understands that, at the time he notified the Army of his concern about a mistri-

al, plaintiff may have believed in good faith that his concern was legitimate. If plaintiff did so

Finally, the unusual circumstances traditionally warranting exception to the exhaustion doctrine do not exist in the instant case. In the past, courts refused to apply the exhaustion doctrine where administrative remedies were inadequate or litigants' resort to them would have been futile, *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1575 (Fed.Cir.1990); *Cooper v. Secretary of the Army*, 807 F.2d 988, 990 (Fed.Cir. 1986); *Bendure v. United States*, 554 F.2d 427, 213 Ct.Cl. 633, 641 (1977), or where application of the exhaustion doctrine would have been unjust. *Bendure*, 213 Ct.Cl. at 640; *Athas v. United States*, 597 F.2d 722, 724, 220 Ct.Cl. 96, 102 (1977).

In the instant case, it would not have been futile for plaintiff to resort to the administrative remedies that were available to him. Under 37 C.F.R. § 501.8, plaintiff had the right to appeal the Army's decision to the Under Secretary. As an administrative entity distinct from the Army, the Under Secretary was an adequate forum where plaintiff could have sought redress from the Army's decision.

In addition, it would not be unjust for the court to refuse to review plaintiff's challenge. The court has acted fairly with plaintiff and, based on the record, so has the Army. Throughout its decision-making process, the Army kept plaintiff apprised of his administrative remedies and of the implications of noncompliance. The record reflects that plaintiff received all of this correspondence. As well, the court itself has given the plaintiff ample opportunity to fully litigate his case.[12]

Despite these compelling reasons for applying the exhaustion doctrine to the instant case, however, the court chooses not to do so. The court recognizes that plaintiff lacked the benefit of legal counsel throughout the instant litigation and during the Army's Determination of Rights GPB 10–4364, and that, as a result, it should hold plaintiff to a lower standard in overcoming defendant's motion to dismiss. *Hughes*, 449 U.S. at 9, 101 S.Ct. at 176. Moreover, the court does not believe that allowing plaintiff's challenge would encourage future aggrieved inventors to ignore the administrative process set forth in 37 C.F.R. § 501. *See McKart*, 395 U.S. at 199–200, 89 S.Ct. at 1665–66. Therefore, while plaintiff still should have been aware of the importance of cooperating with the administrative process and exhausting his administrative remedies when he had the chance to do so,[13] the court will proceed to review the Army's Determination of Rights GPB 10–4364.

II. *Summary Judgment*

Summary judgment is an integral part of the federal rules; it is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), (*quoting* Fed. R.Civ.P. 1). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *RCFC 56(c)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A fact is "material" if it might significantly affect

believe, however, then he should have communicated his concern to the court, which he did not.

12. The court notes that it has liberally construed all of plaintiff's filings; it has allowed plaintiff ample discovery time; it has tolerated plaintiff's failure to comply with its repeated orders to provide the court with a phone number where the court could reach plaintiff in order to schedule status conferences; and it has provided plaintiff the opportunity for oral argument.

13. While plaintiff appears *pro se* in the instant case, he was represented by counsel during at least two earlier Army invention rights determi-

nations involving other patents for which he had applied. In each of those earlier cases, unlike the instant case, plaintiff complied with the Army's request to complete an invention rights questionnaire. Also in both of those earlier cases, and unlike the instant case, plaintiff appealed the Army's decision. Thus, when the Army recently conducted Determination of Rights GPB 10–4364, plaintiff should have been aware of the administrative process involved and the importance of complying with that process. His choice not to comply arguably was an informed one, making him that much more responsible for the consequences of that choice.

the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

The party moving for summary judgment bears the initial burden of demonstrating either the absence of any genuine issue of material fact or the absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

■ The court must resolve any doubts about factual issues in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). These summary judgment standards apply to *pro se* litigants, as well as those represented by counsel. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1567 (Fed.Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987).

■ Summary judgment is particularly appropriate where the issues are narrowly defined, as in the instant case. The Army already has determined that the government is entitled to the entire right, title, and interest in and to the invention claimed in the '246 patent. The only issue remaining before the court is whether the Army's Determination of Rights GPB 10–4364 satisfies the standard of review set forth in section 706 of the Administrative Proce-

dure Act (APA), 5 U.S.C. §§ 701–06 (1988). The Federal Circuit has concluded that summary judgment is appropriate following an agency invention rights determination pursuant to E.O. 10096. *See Heinemann v. United States*, 796 F.2d 451, 456 (Fed.Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987).

### A. *Standard of Review*

The court may review the Army's Determination of Rights GPB 10–4364 pursuant to APA § 704. *Heinemann*, 796 F.2d at 454. The appropriate standard of review is the "arbitrary and capricious" standard set forth in APA § 706. *Id.* In the instant case, the court shall hold unlawful and set aside any of the Army's actions, findings, and conclusions that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." APA § 706(2)(A); *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); *Heinemann*, 796 F.2d at 454–55. To make this determination, "the court must consider whether the [Army's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823; *SSIH Equip. S.A. v. United States Int'l Trade Com'n*, 718 F.2d 365, 383 (Fed. Cir.1983).

■ Moreover, plaintiff bears the burden of showing why the Army's findings of fact are arbitrary or capricious. *Electronic & Missile Facilities, Inc. v. United States*, 416 F.2d 1345, 189 Ct.Cl. 237, 263 (1969). Where plaintiff points to no evidence in the administrative record undermining the findings but merely makes broad allegations concerning them, plaintiff has not met his burden.

### B. *Determination of Rights GPB 10–4364*

■ Plaintiff raises two threshold challenges to the Army's Determination of Rights GPB 10–4364. First, plaintiff apparently argues that the Army's decision is

irrelevant to the instant action because plaintiff is not suing the Army.[14] Contrary to plaintiff's assertion, however, the Army's Determination of Rights GPB 10–4364 is directly relevant to plaintiff's claim. The policy set forth in E.O. 10096 applies to "all Government agencies with respect to inventions ... made by any Government employee." Pursuant to E.O. 10096, it is the government as a whole that obtains the rights to an invention made by a government employee, not just the particular agency for which the employee works. Plaintiff, who was employed by the Army, cannot escape the provisions of E.O. 10096 simply by attempting to sue as separate entities government agencies other than the Army.

Second, plaintiff contends that the Army had no authority to conduct Determination of Rights GPB 10–4364 because plaintiff's action involves a civil matter, because the Army waited too long to make its determination, and because it could not retroactively apply E.O. 10096 to a patent issued in 1971.

Plaintiff's arguments are unavailing. Pursuant to 37 C.F.R. § 501.4 (1990), the Army has the approval of the Under Secretary to determine whether the results of research, development, or other activity conducted by its employees constitute an invention within the purview of E.O. 10096 and to determine the rights therein. In *Heinemann,* the Federal Circuit held E.O. 10096 to be constitutional. 796 F.2d at 455. *See also Kaplan v. Corcoran,* 545 F.2d 1073, 1077 (7th Cir.1976).

Moreover, nothing in E.O. 10096 limits the time within which the government may assert the rights that it had to the '246 patent between the patent's issue date and its expiration date. Despite plaintiff's argument, it makes no difference that the government did not challenge plaintiff's rights in the '246 patent until over 19 years after the patent issued. Indeed, the government had no need to assert its rights in the '246 patent until plaintiff brought this infringement suit.[15]

Finally, plaintiff's contention that a federal regulation promulgated in 1988 cannot apply retroactively to a patent issued in 1971 lacks merit. Section 501 of 37 C.F.R. implements E.O. 10096, which applies to all inventions made by government employees on or after January 23, 1950.[16]

In addition to his jurisdictional challenges to the Army's Determination of Rights GPB 10–4364, plaintiff disputes a factual finding from that determination. Specifically, plaintiff maintains that he was not employed by the Army at the time that he made the invention claimed in the '246 patent. To the contrary, however, the Army found in its Determination of Rights GPB 10–4364 that plaintiff was employed by the government at the time he made the invention claimed in the '246 patent,[17] that the invention was directly related to plaintiff's assigned duties, and that plaintiff's duties placed him within at least E.O. 10096(1)(c)(i)–(iii), thereby establishing the presumption that the government owns the entire right, title and interest in and to the '246 patent. The Army also found that plaintiff failed to rebut this presumption.[18]

**14.** In his complaint, plaintiff only names the Department of Energy (DOE) as an alleged infringer of the '246 patent. In later motions, however, plaintiff alleges that at least three government agencies infringed the '246 patent, including DOE, the United States Air Force, and the Department of Veterans Affairs.

**15.** The '246 patent expired on June 8, 1988, 17 years from the date of its issue on June 8, 1971. 35 U.S.C. § 154.

**16.** The language of E.O. 10096 that sets the standards for determining rights to inventions of government employees has not changed substantively since its promulgation on January 23, 1950. 3 C.F.R. § 292 (1949–1953 Comp.).

**17.** Specifically, the Army found that "[plaintiff] was a Government employee at Fort Belvoir from sometime in 1961 until sometime after 15 Oct 65." Defendant's Motion for Dismissal and for Summary Judgment at p. A596.

**18.** Regulations governing rights in inventions made by government employees are codified at 37 C.F.R. § 501. Section 501.6 incorporates E.O. 10096, which governs the specific procedures to be used and standards for determining the rights to inventions made by government employees. In relevant part, E.O. 10096 provides:

  1. The following basic policy is established for all Government agencies with respect to

In disputing the Army's findings before this court, plaintiff points to no evidence in the administrative record undermining the Army's findings but merely makes broad allegations that these findings are incorrect.[19] As a result, the court finds that plaintiff has not met his burden to show specifically why the Army's findings of fact are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Therefore, upon careful review of the evidence that the Army considered in making its Determination of Rights GPB 10–4364,[20] the court finds that the Army's Determination of Rights GPB 10–4364 was neither arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law. Moreover, the court finds that the Army based its determination on a consideration of relevant factors and that it did not clearly err in its judgment. *See SSIH Equip.*, 718 F.2d at 383. According-ly, the court affirms Determination of Rights GPB 10–4364.[21]

## Conclusion

For the reasons stated above, defendant's motion for dismissal is denied and defendant's motion for summary judgment is hereby granted. In addition, defendant's documents pertaining to employee personnel records shall remain *in camera*, except for the references in this Opinion.

Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.

---

inventions hereafter made by any Government employee:

(a) The Government shall obtain the entire right, title and interest in and to all inventions made by any Government employee (1) during working hours, or (2) with a contribution by the government of facilities, equipment, material, funds, or information, or of time or services of other Government employees on official duty, or (3) which bear a direct relation to or are made in consequence of the official duties of the inventor.

. . . .

(c) In applying the provisions of paragraphs (a) ... above, to the facts and circumstances relating to the making of any particular invention, it shall be presumed that an invention made by an employee who is employed or assigned (i) to invent or improve or perfect any art, machine, manufacture, or composition of matter, (ii) to conduct or perform research, development work, or both, (iii) to supervise, direct, coordinate, or review Government financed or conducted research, development work, or both, or (iv) to act in a liaison capacity among governmental or nongovernmental agencies or individuals engaged in such work ... falls within the provisions of paragraph (a), above.... [This] presumption may be rebutted by the facts or circumstances attendant upon the conditions under which any particular invention is made....

If a government employee falls into any category of E.O. 10096(1)(c), a rebuttable presumption is established that the government is entitled to obtain the entire right, title and interest in and to the employee's invention, pursuant to E.O. 10096(1)(a).

19. In addition to his allegations, plaintiff submitted a copy of the '246 patent as proof of his ownership rights to the invention described in that patent. Pursuant to 35 U.S.C. § 131, the Commissioner of Patents and Trademarks issues patents to applicants whose inventions appear to be patentable under 35 U.S.C. §§ 101–03. Defendant does not dispute that plaintiff is the patentee. Defendant contends, however, that the government is entitled to the entire right, title, and interest in and to the invention claimed in the '246 patent pursuant to 37 C.F.R. § 501.6.

20. The Army's findings are supported by a variety of letters, employment records, memoranda, and reports regarding plaintiff's employment at Fort Belvoir. Defendant's Motion for Dismissal and for Summary Judgment at pp. A2, A180–82, A189, A213, A239, A241, A246–47, A255, A596.

21. Defendant submits additional records relating to plaintiff's employment at Fort Belvoir that the Army did not locate until after it had completed its Determination of Rights GPB 10–4364, allegedly because of plaintiff's refusal to disclose his social security number to the Army. Because the evidence in the administrative record alone is sufficient to uphold the Army's decision, however, the court has not considered this supplemental evidence in reviewing the Army's decision.